IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| American Zurich Insurance Company, | Case No. 3:04 CV 7263 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Cooper Tire & Rubber Company, et al., | |
| Defendants | |

This matter is before the Court on the Motion for Summary Judgment (Doc. No. 87) of Third-Party Defendants Marsh Placement, Inc. and Marsh USA, Inc. (collectively "Marsh"), to which Defendant/Third-Party Plaintiff Cooper Tire & Rubber Co. ("Cooper") filed a Memorandum in Opposition (Doc. No. 105), and Marsh filed a Reply (Doc. No. 106). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons outlined below, Marsh's Motion is granted.

## BACKGROUND

Marsh has been Cooper's insurance broker and risk consultant since the 1950s. Marsh secured a multi-layer insurance program on Cooper's behalf during the years at issue here. The first layer of insurance was a Commercial Umbrella Policy issued by National Union Fire Insurance Company of Pittsburgh PA (National Union), in effect from April 1998 to April 1999. The National Union policy had limits of $50 million per occurrence and $50 million aggregate, after a self-insured retention of $1,750,000 per occurrence and $6 million annually.

The next layer of insurance was provided by a Commercial Excess Liability Policy issued by Zurich. The Zurich policy, in effect from April 1997 to April 2002, had limits of $25 million per occurrence and $25 million annual aggregate. This coverage is specifically excess of the National Union policy. Cooper also maintained a third layer in excess of the National Union and Zurich policies which provided coverage of $25 million per occurrence and $25 million annual aggregate.

During the effective periods of these policies, Cooper was sued in numerous courts throughout the country by various plaintiffs who claim that they, or their family members, had been injured or killed in motor-vehicle accidents caused by allegedly-defective tires manufactured by Cooper. National Union provided coverage for many of these claims, but in November 2002, it notified Zurich that the National Union policy limits, as well as Cooper's self-insured retention, were near exhaustion for the period of April 1998 to April 1999.

Zurich alleged that the National Union policy required National Union to pay defense costs **in addition** to the limits of the policy, but National Union applied approximately $11 million of defense costs toward the depletion of its aggregate policy limit. In May 2004, Zurich filed the instant action against Cooper and National Union. Zurich sought a judgment declaring (1) that the defense costs did not deplete the aggregate policy limit of the National Union policy, (2) the Zurich policy is not triggered until the National Union policy limits are exhausted by the payment of settlements and judgments only, and (3) any defense costs it paid would deplete the per-occurrence and aggregate limits of the Zurich policy.[1]

---

[1] Zurich brought additional claims to (1) recover amounts already paid out under the Zurich policy based on the theories of equitable subrogation and unjust enrichment, and (2) request an accounting of all amounts paid by National Union on Cooper's behalf.

2

Cooper filed a Third-Party Complaint against Marsh, alleging that Marsh executed an unauthorized retroactive modification of the policy. Specifically, Cooper claims that the Zurich policy expressly provided that Zurich would pay defense costs in addition to the per-occurrence and aggregate policy limits. Sometime in 2002, however, Marsh allegedly attached Endorsement 17 to the Zurich policy, converting the policy from a "defense in addition to limits" policy to a "defense within limits" policy.

Cooper brought three causes of action in its First Amended Third-Party Complaint (Doc. No. 71): (1) negligence; (2) breach of contract; and (3) breach of fiduciary duty. Each of these claims is made expressly contingent on the Court finding that Endorsement 17 is valid and binding on Cooper. *Id.* at ¶¶ 27, 32, 37. Cooper seeks two remedies: (1) a judgment declaring that Marsh is responsible to pay all costs that Cooper incurs as a result of the Court's ruling (that Endorsement 17 is valid); and (2) legal fees and costs incurred defending Zurich's claim.

On March 17, 2006, a Stipulated Order of Dismissal was entered in which Cooper, Zurich, and National Union agreed to dismiss all claims, counterclaims, and cross-claims against each other (Doc. No. 91). Each of these claims was dismissed with prejudice **except** Zurich's claim seeking a declaration that defense costs erode the limits of the Zurich policy. *Id*. at ¶2. Additionally, the Order specifically noted that it did not affect Cooper's Third-Party Complaint.

## STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith*

3

*Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## DECLARATORY JUDGMENT

Declaratory relief is a procedural remedy; as such, "the federal rules respecting declaratory judgment actions apply in diversity cases." *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986). The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, states:

> "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party. . .

The "case or controversy" clause of the United States Constitution also applies to declaratory judgment actions. *Detroit, Toledo & Ironton R.R. Co. v. Consolidated Rail Corp.*, 767 F.2d 274, 279 (6th Cir. 1985). To issue a declaratory judgment, the Court must be faced with "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (citations omitted). There is no precise test to differentiate between an actual controversy and a nonjusticiable abstract question; the difference between the two is a matter of degree. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298 (1979). Accordingly, this determination must be made on a case-by-case basis.

When determining whether an actual controversy exists, the appropriate inquiry is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of

4

a declaratory judgment." *Detroit, Toledo & Ironton R.R. Co.*, 767 F.2d at 279 (quoting *Maryland Cas. Co.*, 312 U.S. at 273). "Stated differently, '[a] controversy, to be justiciable, must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop.'" *Hillard v. First Financial Ins. Co.*, Case No. 91-6238, 1992 U.S. App. LEXIS 17386, at *4 (6th Cir. July 16, 1992) (quoting *Rowan Co., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989)).

It is not essential that Plaintiff's injury be "absolutely 'immediate' and 'real.' The potential for injury need only be '**sufficiently** immediate and real[].'" *Kelley v. E.I. DuPont De Nemours & Co.*, 17 F.3d 836, 845 (6th Cir. 1994) (emphasis added) (quoting *Detroit, Toledo & Ironton R.R. Co.*, 767 F.2d at 279). In deciding whether the controversy is sufficiently immediate, "declaratory relief is appropriate when and only when one or both parties have pursued a course of conduct that will result in imminent and inevitable litigation unless the issue is resolved by declaratory relief." 12 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 57.22[2][c] (3d ed. 2003) (citing BORCHARD, DECLARATORY JUDGMENTS (2d ed. 1941); *Kelley*, 17 F.3d at 844-845).

Cooper does not contend that imminent and inevitable litigation will occur if declaratory relief is not granted. The crux of Cooper's argument is that if Endorsement 17 is held to be valid and enforceable some time in the future, Marsh should be liable for any loss sustained by Cooper as a result of Marsh's allegedly wrongful conduct. The fact that liability is contingent "does not necessarily defeat jurisdiction of a declaratory judgment action." *Associated Indem. v. Fairchild Industries*, 961 F.2d 32, 35 (2d Cir.1992) (citations omitted). "Rather, 'the practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists.'" *GTE Directories Publishing Corp. v. Trimen Am.*, 67 F.3d

5

1563, 1569 (11th Cir. 1995) (quoting 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE, § 2757, at 587 (2d ed. 1983)); *see also*, JAMES W. MOORE, *supra,* at § 57.22[1] ("[I]n determining the existence of an actual controversy, the practical likelihood that the contingencies will occur, such that the controversy is real, is determinative").

In the instant action, we are dealing with an insurance policy which provides a layer of coverage somewhere in the middle of Cooper's overall products-liability insurance program. Accordingly, for Cooper to realize any loss from Marsh's alleged wrongful conduct, the limits of the Zurich policy must first be completely exhausted. Then, the company providing the next layer of insurance must either (a) refuse to acknowledge that defense costs eroded the Zurich policy and withhold coverage or (b) adopt Endorsement 17 and exhaust its policy limits. The Record is void of any evidence showing a practical likelihood that these contingencies will be met. Further, policy exhaustion becomes less likely with the passage of time. Accordingly, the likelihood of the controversy becoming real is too remote, and there is not sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

At an October 6, 2006 status phone conference / oral argument, counsel for Cooper insisted that the Court need not determine the validity or enforceability of Endorsement 17. Rather, Cooper urged the Court to issue a judgment declaring that if Endorsement 17 is later held to be valid, Marsh would be liable for any resulting gap in coverage. This position is untenable: any determination of negligence, breach of contract, or breach of duty here is necessarily predicated on a finding that Endorsement 17 is valid. A cursory review of the Third-Party Complaint (Third Pty. Compl., Doc. No. 71 at ¶¶ 27, 32, 37) (emphasis added) reveals as much:

**If the Court finds Endorsement No. 17 to be valid** and binding on Cooper Tire, Marsh breached its duty to act on Cooper Tire's behalf and in Cooper Tire's bests interest, and negligently procured an insurance program that was not approved by Cooper Tire.

. . .

**If the Court finds Endorsement No. 17 to be valid** and binding on Cooper Tire, then Marsh breached its contractual duties to Cooper Tire.

. . .

**If the Court finds Endorsement No. 17 to be valid** and binding on Cooper Tire, Marsh breached its duty to act in Cooper Tire's best interests and to procure an insurance program approved by Cooper Tire.

There is no way to determine the culpability of Marsh without ruling on the validity or enforceability of Endorsement 17. This issue, however, is no longer before the Court. As noted above, the parties entered into a settlement and dismissed all claims **except** those in the Third-Party Complaint. The parties expressly declined to determine the validity of Endorsement 17, leaving it for another day, by dismissing that claim without prejudice (Doc. No. 91 at ¶2).

With the underlying action between Zurich and Cooper now gone, the Third-Party Complaint essentially becomes an unripe action seeking damages which have yet to (and may never) materialize. Zurich is no longer in the suit and the issue is no longer before the Court. Therefore, no actual, justiciable controversy exists between Cooper and Marsh.

### ATTORNEY FEES AS COMPENSATORY DAMAGES

Marsh has also moved for summary judgment on Cooper's claim for attorney fees. Cooper claims that it is entitled to recover the attorney fees and litigation costs it incurred defending Zurich's claim for enforcement of Endorsement 17.

"As a general rule, the costs and expenses of litigation, other than the usual court costs, are not recoverable in actions for damages, and ordinarily no attorney fees are allowed." *Vinci v.*

7

*Ceraolo*, 79 Ohio App. 3d 640, 649 (1992) (quoting *Gustafson v. Cotco Enter., Inc.*, 42 Ohio App. 2d 45, 52 (1974)). However, "attorney fees and costs of litigation with a third party may be recoverable if the defendant's wrongful conduct caused the plaintiff to become involved in litigation with that third party." *Meade v. National Bank of Adams Cty.*, Case No. 02CA733, 2002-Ohio-5747, at ¶ 18 (citing *S & D Mech. Contrs., Inc., v. Enting Water Conditioning Sys. Inc.*, 71 Ohio App. 3d 228, 241 (1991)). This proposition has been accepted by at least one court in this District. *See Berks Title Ins. Co., v. Haendiges*, 591 F. Supp. 879, 889 (N.D. Ohio 1984).

The Court, however, is guided by the case of *Dalessio v. Williams*, 111 Ohio App. 3d 192 (1996). In *Dalessio*, the court faced an analogous procedural situation: a plaintiff (Dalessio) sued defendants (the Williamses), who in turn filed a third-party complaint against Blough alleging breach of contract. Dalessio subsequently dismissed his claims. The Williamses sought to recover from Blough the attorney fees incurred defending Dalessio's suit, arguing that Dalessio's suit would not have occurred absent Blough's breach of contract. *Id.* at 195. The Court considered the *S & D Mech. Contrs., Inc.* and *Berks Title Ins. Co.* decisions, but declined to award fees (*Id.* at 196):

> Although the Williamses present an attractive argument, we ultimately reject it. The results in *S & D* and *Berks* were each dependent upon a finding of a breach of contract. Such a determination is a necessary prerequisite to an award of attorney fees. (citation omitted). In contrast, Blough was never judicially determined to be in breach of his contract with the Williamses. Dalessio dismissed his suit before such a determination could have been made. . . . In the absence of a finding that Blough breached the contract, an award of damages, such as the attorney fees sought in this case, was not warranted. The trial court, therefore, properly entered summary judgment for Blough.

Here, as in *Dalessio*, Zurich dismissed the claims without determination of the issue upon which Cooper's action is premised. A determination of the validity and enforceability of Endorsement 17 is a "necessary prerequisite" to an award of fees for Cooper. This claim, however, was dismissed with Cooper's consent. Based on the holding in *Dalessio*, attorney fees and costs are not warranted under the facts of this case, and summary judgment is appropriate.

## CONCLUSION

Cooper's request for declaratory relief fails because no actual controversy exists between the parties. Cooper's request for attorney fees fails because the issue of the validity and enforceability of Endorsement 17 was dismissed without a determination. Accordingly, Marsh's Motion for Summary Judgment (Doc. No. 87) is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

December 13, 2006